634 A.2d 53

In re WALLACE W.

No. 54, Sept. Term, 1993.

Court of Appeals of Maryland.

Dec. 20, 1993.

Shannon E. Avery, Asst. Public Defender (Stephen E. Harris, Public Defender, and Michael R. Braudes, Asst. Public Defender), on brief, Baltimore, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen.), on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Appellant Wallace W. contends that Maryland's unauthorized use statute is inapplicable to the taking of a purse. *See* Maryland Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Article 27, § 349.[1] Wallace argues that the statute's coverage is limited to livestock, boats, and vehicles, and thus does not extend to purses. We agree with Appellant's contention and, for the reasons discussed below, reverse the finding that he committed a delinquent act.

## I.

On May 20, 1992, a juvenile hearing was held to determine whether Appellant committed a delinquent act. *See* Md.Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.), Cts. & Jud. Proc. Art., § 3-801(k) (defining delinquent act as "an act which would be a crime if committed by an adult"). The testimony revealed that, during a lunch period in November 1991, the following events transpired in the Southern High School cafeteria: Wallace approached several female students while they were eating lunch. He took a purse from the students' table and looked through it without the owner's permission. Wallace then told the owner of the purse, "give me some money," to which the student complied by giving Wallace 35 cents. Thereafter, Wallace returned the student's purse.

Based on this testimony, the master ruled that Wallace's conduct violated Maryland's unauthorized use statute[2] and

---

1. All future references to § 349 shall be to Maryland Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Article 27.

2. In its entirety, the unauthorized use statute reads as follows:
   "**§ 349. Unauthorized use of livestock, boat, or vehicle.**
   Any person or persons, his or their aiders or abettors who shall enter, or being upon the premises of any other person, body corporate or politic in the State, shall, against the will and consent of said person or persons, body corporate or politic or their agents, wilfully take and carry away any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart, boat, craft, vessel, or any other vehicle including motor vehicle as defined in the laws of this State relating to such, or property whatsoever, or take

found that he was a delinquent child. Although the State originally filed petitions against Wallace alleging assault, assault with intent to rob, robbery, and unauthorized use, the Master recommended that he be adjudicated delinquent on only the unauthorized use count. Wallace filed exceptions to the finding that he committed a delinquent act, arguing that the unauthorized use statute is limited to "domestic animals and forms of transportation" and did not cover the taking of a purse. The Circuit Court for Baltimore City (McCurdy, J.) overruled his exceptions and entered a finding of delinquency. The judge was "satisfied that the law in Maryland is that unauthorized use can be applied to any property."

Wallace appealed this adverse decision to the Court of Special Appeals. The intermediate appellate court affirmed the trial court based on its prior decision in *Pirner v. State*, 45 Md.App. 50, 411 A.2d 135 (1980). In *Pirner*, the Court of Special Appeals held that the unauthorized use statute encompasses a broad range of property including prescription drugs. 45 Md.App. at 58, 411 A.2d at 140. Relying on *Pirner*, the court held that, like prescription drugs, purses also fell within the language of § 349. Wallace filed a petition for certiorari with this Court, asking that we address "an important question of statutory interpretation which has not previously been addressed by this Court."

and carry away out of the custody or use of any person or persons, body corporate or politic, or his or their agents, any of the above-enumerated property at whatsoever place the same may be found, shall upon conviction thereof in any of the courts of this State having criminal jurisdiction be adjudged guilty of a misdemeanor, and shall restore the property so taken and carried away, or, if unable so to do, shall pay to the owner or owners the full value thereof, and be fined not less than fifty nor more than one hundred dollars, or be imprisoned in the county or city jail, or the house of correction, for not less than six months nor more than four years, or be both fined and imprisoned as aforesaid, in the discretion of the court, although it may appear from the evidence that such person or persons, his or their aiders and abettors, took and carried away the property or any portion of the same enumerated in this section, for his or their present use, and not with the intent of appropriating or converting the same."

## II.

■ Article 27, Section 349, proscribes the unauthorized use of "any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart, boat, craft, vessel, or any other vehicle including motor vehicle as defined in the laws of this State relating to such, or property whatsoever...." The State and Wallace disagree over the applicability of *ejusdem generis* to this statute. A prominent commentator on statutory construction has explained:

"The doctrine of ejusdem generis applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires. It is generally held that the rule of ejusdem generis is merely a rule of construction and is only applicable where legislative intent or language expressing that intent is unclear." (Footnote omitted).

2A Sutherland Stat. Const. § 47.18, at 200 (5th ed. 1992).

■ This Court stated that, "when general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned." *Giant of Md. v. State's Attorney*, 274 Md. 158, 167, 334 A.2d 107, 113 (1975). *See also State v. 158 Gaming Devices*, 304 Md. 404, 429 n. 12, 499 A.2d 940, 953 n. 12 (1985). *Ejusdem generis* is based on "the supposition that if the legislature had intended the general words to be construed in an unrestricted sense, it would not have enumerated the specific things." *158 Gaming Devices*, 304 Md. at 429 n. 12, 499 A.2d at 953 n. 12. *See also State v. Sinclair & Sinwellan Corp.*, 274 Md. 646, 658, 337 A.2d 703, 711 (1975). The doctrine has been called "a common drafting technique designed to save the legislature

from spelling out in advance every contingency in which the statute could apply." 2A Sutherland Stat. Const. § 47.17, at 188. In addition, *ejusdem generis* is applied "more strictly in the construction of penal statutes ... since penal statutes shall be narrowly construed." *Giant of Md.*, 274 Md. at 167–68, 334 A.2d at 113. *See also Sinclair & Sinwellan Corp.*, 274 Md. at 658, 337 A.2d at 711; 2A Sutherland Stat. Const. § 47.17, at 189 ("The doctrine of ejusdem generis has been said to be ' "especially applicable to penal statutes." ' " (quoting *State v. Kahalewai*, 56 Haw. 481, 541 P.2d 1020, 1025 (1975), in turn quoting *State v. Rackle*, 55 Haw. 531, 523 P.2d 299, 302 (1974)).

We believe that § 349 requires the application of the doctrine of *ejusdem generis*. The statute applies to "any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow." The statute is further applicable to "any carriage, wagon, buggy, cart, boat, craft, vessel, or any other vehicle including motor vehicle as defined in the laws of this State relating to such." Lastly, the statute refers to "property whatsoever." The first grouping may be categorized as livestock, and the latter group as vehicles that travel on land or water. By construing the general words "to include only those things or persons of the same class or general nature as those specifically mentioned," *Giant of Md.*, 274 Md. at 167, 334 A.2d at 113, the phrase "property whatsoever" includes property in the "same class or general nature" as livestock and land or water vehicles. *See Sinclair & Sinwellan Corp.*, 274 Md. at 658–59, 337 A.2d at 711 (applying *ejusdem generis* to the statutory phrase "money, credit, goods, wares or anything of value" and concluding that "anything of value" meant only items in the "same class or general nature" as money, credit, goods or wares). We believe that the Legislature would not have designated these classes with such a lengthy list of items if it meant for the statute to apply to any and all property. *See 158 Gaming Devices*, 304 Md. at 429 n. 12, 499 A.2d at 953 n. 12 ("[I]f the legislature had intended the general words to be construed in an unrestricted sense, it would not have enumerated the

specific things."); *Sinclair & Sinwellan Corp.*, 274 Md. at 658, 337 A.2d at 711.

We recognize that the doctrine of *ejusdem generis* should not be applied to restrict the meaning of general words following a class of particular words " 'where the particular words exhaust the class....' " *American Ice Co. v. Fitzhugh*, 128 Md. 382, 388, 97 A. 999, 1001 (1916) (quoting *Nat'l Bank of Commerce v. Ripley*, 161 Mo. 126, 132, 61 S.W. 587, 588 (1901)). In such cases, " 'the general words must be construed as embracing something outside of that class.' " *Id.* This qualification follows from the "fundamental rule of statutory construction ... that no word, clause, sentence or phrase should be rendered surplusage, superfluous, meaningless, or nugatory." *Md. Port Adm. v. Brawner Contracting Co.*, 303 Md. 44, 60, 492 A.2d 281, 289 (1985). *See also Management Personnel Serv. v. Sandefur*, 300 Md. 332, 341, 478 A.2d 310, 315 (1984); 2A Sutherland Stat. Const. § 47.21, at 207 ("Where the specific words embrace all the persons or objects of the class designated by the enumeration, the general words take a meaning beyond the class.... In order to prevent their rejection as surplusage, the general words take an unrestricted meaning on the ground that the legislature, by the addition of general words to an exhaustive enumeration, must have intended that they have meaning outside the class.").

The State contends that this qualification to *ejusdem generis* controls the instant case because "the property enumerated in Section 349 exhausts the two classes mentioned: livestock and motor vehicles." Thus, the State argues that the phrase " 'or property whatsoever' evinces the legislative intent to have the statute apply to any and all property." According to the State, such a construction would avoid rendering the clause, "or property whatsoever," mere surplusage. Wallace, however, contends that the phrase "should be interpreted to include only those types of property that are specifically enumerated, namely domesticated animals and forms of transportation." As Wallace aptly observes, the statute does not

mention every conceivable type of livestock. For instance, the statutory language fails to list "goats" among the enumerated livestock.[3]  Accordingly, the phrase "or property whatsoever" may be restricted in meaning without rendering it superfluous because the particular words in § 349 do not constitute an exhaustive enumeration. It is entirely reasonable to believe the Legislature drafted § 349 with *ejusdem generis* in mind to save it "from spelling out in advance every contingency in which the statute could apply." 2A Sutherland Stat. Const. § 47.17, at 188. Thus, the State's contention that the classes have been exhausted is without merit, and *ejusdem generis* may be applied to this statute.

█ We further recognize that *ejusdem generis* should not be invoked where it would "subvert [the statute's] obvious purpose." *Blake v. State,* 210 Md. 459, 462, 124 A.2d 273, 274 (1956). *See also Dep't of Assess. & Tax. v. Belcher,* 315 Md. 111, 121, 553 A.2d 691, 696 (1989) ("[T]he general words will not be restricted in meaning if upon a consideration of the context and the purpose of the particular statutory provisions as a whole it is clear that the general words were not used in the restrictive sense."); 2A Sutherland Stat. Const. § 47.22, at 210 ("A final qualification on the doctrine [of *ejusdem generis* ] is that the general words are not restricted in meaning to objects of the same kind ... if there is a clear manifestation of a contrary intent."). Our conclusion, however, comports with our previous discussion of the legislative purpose behind § 349. For instance, in *Jones v. State,* 304 Md. 216, 498 A.2d 622 (1985), we made the following observation:

"Each of the chattels (except for motor vehicles and boats) delineated in § 349 today were also delineated in the origi-

---

**3.** Wallace also asserts that the clause listing forms of transportation ("any carriage, wagon, buggy, cart, boat, craft, vessel, or any other vehicle including motor vehicle as defined in the laws of this State relating to such") is not exhaustive. Wallace recognizes that the statute clearly covers vehicles that traverse land ("carriage, wagon, buggy, cart [and] motor vehicle") and means of water transportation ("boat, craft, vessel"). He notes, however, that the statutory language may be inapplicable to airplanes and helicopters.

nal legislation over one hundred years ago. It is clear that these chattels were inherently mobile, and were doubtless considered to be of great value when added to the statutory scheme. This mobility, coupled with the value of the property and the increased likelihood of damage to person or property should that property be even temporarily appropriated, resulted in *'singling out for special treatment'* the chattels found in unauthorized use statutes." (Emphasis added) (footnote and citation omitted).

*Jones,* 304 Md. at 221–22, 498 A.2d at 624–25. If we were to construe the phrase "property whatsoever" as being limitless in scope, *all* property would be subject to the unauthorized use statute. Such a construction would subvert § 349's purpose of " 'singling out [certain property] for special treatment.' " *Jones,* 304 Md. at 222, 498 A.2d at 625.

Moreover, over forty years ago, this Court intimated that the doctrine of *ejusdem generis* should apply to § 349. In *Anello v. State,* 201 Md. 164, 167, 93 A.2d 71, 72 (1952), the Court noted that the unauthorized use statute "originated in 1880 when the Legislature created the misdemeanor of larceny of the use of *any horse or other animal* or *any carriage or other vehicle,* though taken for present use, and not with intent of appropriating or converting the same." (Emphasis added). As originally enacted in 1880, the unauthorized use statute applied to "any horse, mare, colt[,] gelding, mule, ass, sheep, hog, ox, or cow, or any carriage, wagon, buggy, cart, or any other vehicle *or property whatsoever....*" Chapter 164 of the Acts of 1880 (emphasis added). It is readily apparent that the *Anello* Court believed the phrase "property whatsoever" was limited to "other" animals and "other" vehicles similar to those enumerated and did not apply to any and all property. *See also Fletcher v. State,* 231 Md. 190, 193, 189 A.2d 641, 644 (1963) (noting that § 349 applies to "any of the kinds of property enumerated therein").

In addition to examining prior case law and the statutory language of § 349, we believe it helpful to look to other manifestations of legislative purpose. In *Maryland Nat'l*

*Bank v. Pearce,* 329 Md. 602, 620 A.2d 941 (1993), we reiterated the following:

> " 'When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, *its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose* or goal, which becomes the context with which we read the particular language before us in a given case.' " (Emphasis added).

329 Md. at 619–20, 620 A.2d at 949 (quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987)). In the instant case, resort to "subsequent legislation" demonstrates that applying *ejusdem generis* to § 349 in no way subverts its purpose. Two amendments to the statute confirm our belief that the phrase "or property whatsoever" does not include property outside of the three classes of enumerated property: livestock, boats, and vehicles.

In 1918, the Maryland Legislature added the language, "including motor vehicle as defined in the laws of this State relating to such," to § 349. *See* Ch. 422 of the Acts of 1918. In 1979, the Legislature further amended the unauthorized use statute by adding "boat, craft, [and] vessel" to the property covered by the statute. *See* Ch. 552 of the Acts of 1979. The latter amendment was for "the purpose of prohibiting the unauthorized use of boats." *Id.* These two amendments were made despite the fact that the unauthorized use statute always included the phrase, "or property whatsoever." The unauthorized use statute now covers "any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart, *boat, craft, vessel,* or any other vehicle *including motor vehicle as defined in the laws of this State relating to such,* or property whatsoever...." § 349 (emphasis added).

If the Legislature believed that "property whatsoever" meant any and all property, then these two amendments were unnecessary. For instance, if boats were always covered by the statute under the "property whatsoever" provision, an amendment for "the purpose of prohibiting the unauthorized use of boats" was entirely superfluous. Rather than deem this amendment mere surplusage, it is more reasonable to believe that, in 1979, the Legislature expanded the statute's limited coverage to vehicles that travel by water in addition to those that travel on land. Similarly, in 1918, the Legislature obviously wanted to assure that the statute covered motor vehicles as well as those vehicles traditionally drawn by animals.[4] Despite the State's contention that "property whatsoever" should be broadly construed, the Maryland Legislature has consistently viewed the phrase in a more restrictive manner.[5]

---

**4.** In *Wright v. Sas,* 187 Md. 507, 50 A.2d 809 (1947), this Court discussed the history behind § 349. With respect to the 1918 amendment expressly including motor vehicles within the scope of § 349, the Court noted that,

"[p]erhaps [it] was not necessary in section 397 [the predecessor of § 349], which already covered 'any carriage, wagon, buggy, cart or any other vehicle, * * * or property whatsoever.' Apparently it was thought or feared that, by reason of the association of vehicles (all horse-drawn or ox-drawn, in 1880) with horses, 'vehicle' might not include a subsequently invented 'horseless carriage.' "

*Wright,* 187 Md. at 511, 50 A.2d at 811. This comment in *Wright* was apparently directed at the phrase "any other vehicle." The Court was simply noting that this phrase may have been broad enough to cover motor vehicles, making the 1918 amendment unnecessary. The Legislature, however, wished to clarify the scope of the phrase "any other vehicle." If the phrase "property whatsoever" extended to any and all property, there would have been no need for the Legislature to make this clarification.

**5.** Md.Code (1957, 1990 Repl.Vol.), Art. 1, § 18, states that the

"captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics or otherwise, are intended as mere catchwords to indicate the contents of the sections and subsections. They are not to be deemed or taken as titles of the sections and subsections, or as any part thereof; and, unless expressly so provided, they shall not be so deemed or taken when any of such sections and subsections, including the captions or headlines, are amended or reenacted."

■ The State further contends that, if the Legislature intended for § 349 to have limited coverage, it would have legislatively overruled the *Pirner* decision. As we noted earlier, the Court of Special Appeals in *Pirner* held that § 349 should be broadly construed to cover the unauthorized use of prescription drugs.[6] The State points to *Forbes v. State*, 324 Md. 335, 597 A.2d 427 (1991), in support of its contention that we should not interpret § 349 in a manner different than in *Pirner*. In *Forbes*, we explained our reluctance to overrule a prior interpretation of a statute if this Court's interpretation was not legislatively overturned. We justified this rule by equating legislative inaction to acquiescence. 324 Md. at 342–

In *Morris v. Prince George's County*, 319 Md. 597, 607 n. 4, 573 A.2d 1346, 1350 n. 4 (1990), we stated that "[t]he captions are often the words of the publisher of the Code, not of the legislature, and we do not ordinarily refer to them for purposes of statutory construction. It is otherwise, however, when the General Assembly has itself included the caption in the enacted bill." (Citation omitted).

In the instant case, the term "Livestock" in the subheading (*i.e.* "Larceny—Livestock, Boats, or Vehicles") preceding Article 27, § 349 is the Legislature's word, not that of the publisher. In 1990, the Legislature replaced the word "Horses" with "Livestock." *See* Chapter 6, § 2 of the Acts of 1990. This change was necessary to correct an "obsolete subheading immediately preceding Article 27, § 349." *Id.* If the Legislature believed the statute covered the unauthorized use of *any* property, it made no sense to correct an "obsolete subheading" by substituting a caption specifying three distinct classes of property. We believe that the phrase "Livestock, Boats or Vehicles" was used to accurately describe the types of property covered by § 349.

**6.** In *Pirner v. State*, 45 Md.App. 50, 51, 411 A.2d 135, 136 (1980), the defendant made two claims: (1) the unauthorized use statute did not apply to the taking of prescription drugs; and (2) the police search in which the drugs were found was unlawful. Although the State "vigorously" argued that the search was valid, it confessed error with respect to the first issue because the Attorney General believed that the doctrine of *ejusdem generis* applied to § 349. *Pirner*, 45 Md.App. at 53, 411 A.2d at 137. Thus, the State agreed with the defendant's assertion that the count alleging " 'unauthorized use' of the stolen prescription drugs" failed to state a crime. 45 Md.App. at 51–52, 411 A.2d at 136–37. Notwithstanding the State's confession of error, the intermediate appellate court decided that the unauthorized use of prescription drugs was a crime pursuant to § 349. The court, however, held that the evidence upon which the conviction was based had been seized during an unlawful search, and thus reversed the defendant's conviction.

43, 597 A.2d at 431. *See also Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981) ("The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation."). The *Pirner* decision, however, was not an interpretation of § 349 made by this Court, but rather an interpretation by the Court of Special Appeals. It is conceivable that the Legislature believed this Court would correct any misinterpretation of § 349 when the opportunity presented itself. Legislative acquiescence in judicial construction of a statute by the intermediate appellate court might be less indicative of legislative intent than its acquiescence to an interpretation by the highest court of the State. *Cf. United States v. Streidel,* 329 Md. 533, 551 n. 12, 620 A.2d 905, 914 n. 12 (1993) (speaking for this Court, Judge Eldridge stated that legislative acquiescence in judicial interpretation "has little or no applicability when the judicial construction of the statute is not by the highest court of the jurisdiction involved. Thus, with regard to the construction of a Maryland statute, the General Assembly might well wait for an authoritative interpretation by this Court...."). In light of the abundance of evidence supporting the applicability of *ejusdem generis* to § 349, the Legislature's inaction following the *Pirner* decision in no way alters our conclusion.

Our review of the language of § 349, its subsequent legislative history, and prior case law leads us to conclude that the Legislature did not intend for the phrase "or property whatsoever" to be taken literally. Rather, *ejusdem generis* should be applied to § 349 so the phrase is read within the context of the statutory language surrounding it. This construction will best further the statute's purpose. Accordingly, we conclude that the Court of Special Appeals incorrectly relied on the *Pirner* decision, a decision which we must now overrule.[7]

---

7. While we do not wish to engage in a lengthy comparison of § 349 (unauthorized use) and Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 342 (theft), we acknowledge the State's contention that, if *Pirner* is over-

## III.

We hold that the doctrine of *ejusdem generis* is applicable to the unauthorized use statute. Applying this doctrine to § 349, the phrase "or property whatsoever" is necessarily limited to other property that is reasonably categorized as livestock, boats, or vehicles. A purse clearly does not fall within these categories and, thus, the finding that Wallace committed a delinquent act must be overturned.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF DELINQUENCY. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

ruled, there may be a "gap" in Maryland law. The State argues that "[t]he theft statute requires a showing of actual or constructive intent on the part of the accused to deprive the owner permanently of at least some value of the property [whereas unauthorized use] requires no such larcenous intent." Thus, the State asserts that *Pirner* correctly applied § 349 to the "unauthorized takings of all types of property that are not accompanied by the larcenous intent requisite to conviction for theft and, as such, fill[ed] a gap that would otherwise exist in the law." Even if such a "gap" exists, however, it would not justify construing § 349 in a manner contrary to the Legislature's clear intent.