448

66 A.3d 600

**Tony Lamont HAILE**

v.

**STATE Of Maryland.**

**No. 112 Sept. 2006.**

Court of Appeals of Maryland.

April 25, 2013.

Reconsideration Denied June 19, 2013.

450

Amy E. Brennan, Assistant Public Defender, (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for Petitioner.

Diane E. Keller, Assistant Attorney General, (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J.,* RAKER,*CATHELL, HARRELL, BATTAGLIA, GREENE,*WILNER, ALAN M. (Retired, Specially Assigned), JJ.

BELL, C.J.

The petitioner, Tony Lamont Haile, was convicted, by a jury in the Circuit Court for Baltimore County, of first-degree assault, and of aggravated cruelty to animals. The Court of Special Appeals, in an unreported opinion, affirmed the convictions. The petitioner, in this Court, challenges the sufficiency of the evidence to support his felony animal cruelty conviction, and claims that his attorney's failure, after the close of all evidence, to renew the motion for judgment of acquittal, made at the end of the State's case, constituted ineffective assistance of counsel. He thus concludes that a reversal of his conviction is required. We granted his petition for writ of certiorari to consider these issues. For the reasons set forth below, we shall affirm the judgment of the Court of Special Appeals.

## *FACTUAL HISTORY*

In July 2004, fifteen-year-old Daniel Sims was stabbed in the back with a five-inch knife. Sims reported the stabbing to the Baltimore County police, naming and describing the petitioner, Tony Lamont Haile, as his assailant. Baltimore County Police Officer Timothy Bowman was dispatched to the petitioner's aunt's house and, while speaking with said aunt at her house, spotted the petitioner, who, upon discovering Officer Bowman's presence, fled, and continued to do so, despite the officer's explicit orders to stop. K–9 Officer Christopher Davies and Bennie, his canine, who responded to Officer Bowman's call for back-up, discovered the petitioner hiding in the backyard of a private residence, with his hands obscured in his waistband. Since the weapon used to stab Mr. Sims had

---

* Raker and Cathell, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; Wilner, J., retired at the time, also participated in the hearing and conference of this case. After being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

not been recovered, Officer Davies ordered the petitioner to come out of the yard with his hands up, warning him that Bennie, the canine, would be released if he did not comply. When the petitioner refused to show his hands and remained in a position that obscured his left hand, Officer Davies again instructed the petitioner to show his hands and reiterated to the petitioner that Bennie would be released if he failed to comply. The petitioner continued to refuse to show his hands and resisted the attempts of another officer, who had arrived on the scene, to take him into custody, whereupon Officer Davies cut Bennie loose, after shouting, "Police canine, show me your hands or I'll cut the dog loose." [1]

The canine was trained to use a "bite and hold" technique: it would bite down once to apprehend a suspect, and maintain its grip, and would release its hold only when the suspect has complied with the officer's instructions. Using this technique, Bennie, the canine, seized the petitioner by his upper left arm. In response, in addition to struggling, the petitioner struck Bennie repeatedly on its head, inflicting a half-inch wide cut above its right eye, and causing the canine to release its grip. Subsequently, the petitioner attempted to escape over a fence, and Officer Davies ordered Bennie to seize him again. This time, the canine took hold of the petitioner's left side. Undeterred, the petitioner continued to scale the fence, so Officer Davies ordered Bennie to release its grip, to prevent the petitioner from causing it any further injury in his attempt to escape. The petitioner was apprehended by officers on the other side of the fence.

At the close of the State's case, counsel for the petitioner moved for judgment of acquittal. She argued that the injuries to the dog were inflicted in self-defense. The trial court denied this motion, ruling that the issue of self-defense was a matter for the jury. In his case, the petitioner testified that it was dark on the night in question, that he did not initially

---

1. According to Officer Davies' testimony at trial, the phrase "show me your hands or I'll cut the dog loose" is standard language, which all K–9 officers are trained to utilize.

realize he was being pursued by the police, and that he only fled because he assumed he was being chased by a gang member, with whom he had previously had trouble. He also testified that, although he did try to shake Bennie off, he did not recall actually striking him. Defense counsel did not move, or renew the motion, for judgment of acquittal at the close of all evidence. The jury convicted the petitioner of first-degree assault for stabbing Daniel Sims, and aggravated cruelty to an animal for the injury he inflicted upon Bennie. The petitioner was sentenced to consecutive terms of twenty and three years imprisonment.

The petitioner appealed his convictions to the Court of Special Appeals. In that court, he challenged, *inter alia*,[2] the sufficiency of the evidence underlying his conviction for first degree assault, as well as the effectiveness of the assistance rendered by his defense counsel. With respect to the latter, he focused on her failure to move for judgment of acquittal at the close of all evidence. The intermediate appellate court affirmed the convictions in an unreported opinion. It declined to consider the petitioner's ineffective assistance of counsel claim, because, it concluded, the evidence at trial supported the petitioner's convictions for both the assault and the cruelty counts. We granted the petitioner's petition for certiorari, *Haile v. State*, 396 Md. 12, 912 A.2d 648 (2006), to consider the question:

> "Was petitioner denied his right to effective assistance of counsel where his trial attorney failed to renew the motion for judgment of acquittal and the evidence was insufficient to sustain a conviction of aggravated cruelty to animals?"

---

**2.** The petitioner, in the intermediate appellate court, presented three questions for review:

"I. Did the trial court commit plain error in failing to instruct the jury on self-defense?

"II. Did defense counsel render ineffective assistance by failing to renew her motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to sustain appellant's aggravated cruelty to an animal conviction?

"III. Was the evidence sufficient to sustain appellant's conviction for first degree assault?"

In the interest of clarity, we will reframe the issue, addressing it as two questions: whether the evidence presented at trial was sufficient to sustain the petitioner's conviction for aggravated cruelty to animals, and whether the petitioner's trial attorney rendered ineffective assistance by failing to renew, at the close of all of the evidence, a motion for judgment of acquittal made at the conclusion of the State's case.

We shall answer the first question in the negative, and hold that there was sufficient evidence to convict the petitioner of aggravated cruelty to animals. Since the petitioner's ineffective assistance claim is entirely dependent on his sufficiency claim, we need not reach the second question. Nevertheless, we shall exercise our discretion to discuss it, *see* Rule 8–131(a),[3] concluding that we should decline to hold, based only on an argument, and an unquantifiable possibility, that the evidence presented by the State may have fallen short of sufficiency, that counsel's failure to renew a motion for judgment of acquittal automatically renders that assistance ineffective.

## *DISCUSSION*

### A.

The petitioner first argues that the evidence presented at trial was insufficient to sustain his conviction for aggravated cruelty to animals under Maryland Code (2002, 2012 Repl.Vol.) § 10–606(a)(3) of the Criminal Law Article ("CL").[4] That

---

**3.** Maryland Rule 8–131(a), which addresses the general scope of appellate review in the Court of Appeals and Court of Special Appeals, provides, in relevant part:

"Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

**4.** Maryland Code (2002) § 10–606(a)(3) of the Criminal Law Article ("CL") provided, as it currently does in the same section of that article (2002, 2012 Repl.Vol.):

section prohibits a person, "except in the case of self-defense," from "intentionally inflict[ing] bodily harm, permanent disability, or death on an animal owned or used by a law enforcement unit." His argument rests on three premises: first, that § 10–606(a)(3) required the State to prove, which it did not do, that he had the specific intent to inflict bodily harm on the canine; second, that § 10–606(a)(3) prohibits only serious bodily harm, a threshold which the injury to the canine in this case did not meet; and third, that, in any event, he struck the canine in self-defense, an enumerated exception to § 10–606(a)(3).

With regard to the first premise, his specific intent argument, the petitioner posits that it follows from the fact that § 10–606(a)(3) allows the intentional infliction of bodily harm upon an animal owned or used by a law enforcement unit in cases of self-defense, that the State is required, by that section, to prove that one accused under the statute possesses not simply a general intent to strike the animal, but the specific intent to inflict bodily harm upon it. In support of this argument, the petitioner, noting the scarcity of cases addressing the intent necessary for conviction under § 10–606(a)(3), relies on CL § 3–202(a)(1), Maryland's first degree assault statute, the language of which, "[a] person may not intentionally cause or attempt to cause serious physical injury to another," he maintains, is similar to the language of § 10–606(a)(3). He asks this Court to look to the case law interpreting that statute. Accordingly, the petitioner cites to *Chilcoat v. State*, in which the Court of Special Appeals, referencing this Court's decision in *Dixon v. State*, 364 Md. 209, 239, 772 A.2d 283, 301 (2001), held that first degree assault is a specific intent crime. 155 Md.App. 394, 403, 843

---

"(a) Prohibited.—A person may not:
"(1) intentionally mutilate, torture, cruelly beat, or cruelly kill an animal;
"(2) cause, procure, or authorize an act prohibited under item (1) of this subsection; or
"(3) except in the case of self-defense, intentionally inflict bodily harm, permanent disability, or death on an animal owned or used by a law enforcement unit."

A.2d 240, 246 (2004). The petitioner submits that the same conclusion applies to the crime of aggravated assault on animals. Critical to his analysis is *Chen v. State,* 370 Md. 99, 803 A.2d 518 (2002). There, this Court explained the distinction between general intent crimes and specific intent crimes, as follows:

> " 'A specific intent is not simply the intent to do the immediate act but embraces the requirement that the mind be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act. Though assault implies only the general intent to strike the blow, assault with intent to murder, rob, rape or maim requires a fully formed and conscious purpose that those further consequences shall flow from the doing of the immediate act. To break and enter requires a mere general intent but to commit burglary requires the additional specific intent of committing a felony after the entry has been made. A trespassory taking requires a mere general intent but larceny (or robbery) requires the specific animus furandi or deliberate purpose of depriving the owner permanently of the stolen goods.
>
> * * *
>
> "The larger class "specific intent" includes such other members as 1) assault with intent to murder, 2) assault with intent to rape, 3) assault with intent to rob, 4) assault with intent to maim, 5) burglary, 6) larceny, 7) robbery and 8) the specific-intent-to-inflict-grievous-bodily-harm variety of murder. Each of these requires not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result.' "

*Id.,* 370 Md. 99, 110 n. 5, 803 A.2d 518, 524 n. 5 (quoting *Harris v. State,* 353 Md. 596, 603–04, 728 A.2d 180, 183 (1999)).

Applying this analysis to § 10–606(a)(3), the petitioner concludes that its language, prohibiting the "intentional[ ] inflict[ion of] bodily harm, permanent disability, or death" on a police dog, required the State to prove more than that the

perpetrator possessed a general intent to strike the dog, as his actions demonstrated; it required proof, also, that the perpetrator specifically intended to inflict bodily harm upon the dog. The evidence presented at trial, the petitioner submits, fell short of this requirement, because it did not prove the latter intent. This is so, he explains, because the evidence demonstrated only that the petitioner "struck the dog not with the intent to injure the dog but in order to get the dog to remove its teeth from [his] flesh. As soon as the dog released Mr. Haile, Mr. Haile ran from the dog showing further that his actions toward the dog were for the purpose of defending and protecting himself." The petitioner thus concludes that the State failed to prove that the petitioner possessed the specific intent required by § 10–606(a)(3).

The petitioner's next assertion, in support of his insufficiency of the evidence argument, is that the language of § 10–606(a)(3), barring the infliction of "bodily harm" to a police canine, "must mean serious bodily harm, not all harm no matter how minor it may be." The petitioner finds support for this argument in the purpose paragraph of H.B. 711. *See* 1999 Md. Laws Ch. 448 (H.B.711). There, the Legislature stated that its purpose in enacting the bill was to prohibit persons "from inflicting *certain injuries*, disability, or death on animals used by law enforcement units under certain circumstances...." Emphasizing the words, "certain injuries", the petitioner reasons that this language clearly demonstrates the Legislature's intent to prohibit "something less than any and all injuries." In addition, the petitioner's conclusion, that this "something less" must only constitute "serious injuries", is premised on the enumeration of injuries in § 10–606(a)(3), and on the statutory construction doctrine, *ejusdem generis*.

We explained that doctrine in *In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53, 55–56 (1993):

"[W]hen general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned."

(quoting *Giant of Md. v. State's Attorney*, 274 Md. 158, 167, 334 A.2d 107, 113 (1975)) (internal quotation marks omitted). The petitioner notes that § 10–606(a)(3) generally prohibits the intentional infliction of "bodily harm" and, more specifically, the intentional infliction of "permanent disability or death on an animal owned or used by a law enforcement unit." Applying the doctrine to § 10–606(a)(3), he asservates that "bodily harm", as defined by the statute, cannot refer to all categories of bodily harm, including negligible and de minimis harm, but, instead, is limited to serious bodily harm, because that is the only category of harm that falls within the same class of severity as the other types of harm prohibited by § 10–606(a), namely, "intentionally mutilat[ing], tortur[ing], cruelly beat[ing], or cruelly kill[ing] an animal." Taken together, the petitioner asserts that the types of harm in § 10–606(a) demonstrate, in keeping with the doctrine of *ejusdem generis*, that § 10–606(a)(3)'s general prohibition against intentional infliction of "bodily harm" must contemplate only the kind of harm that is as serious as mutilation, torture, or any other cruel actions that could, or do, inflict permanent disability or death on law enforcement animals. He thus submits, even assuming that the petitioner did possess the specific intent required by § 10–606(a)(3), that the evidence presented at trial was insufficient because the dog's injury was insignificant and, therefore, did not fall within the ambit of § 10–606(a)(3).

Because this Court could, and should, find, on the basis of his prior arguments, that the evidence proffered at trial was insufficient, the petitioner explains that it is unnecessary for us to reach the issue of self-defense in this case. He submits, however, that the insufficiency of the evidence presented at trial is further demonstrated by the fact that he acted in self-defense. This is so, he explains, because the dog provoked his response by biting him, to which he simply responded by striking the canine with only the amount of force that was reasonably necessary to cause it to release him.

The petitioner's second main argument addresses the effectiveness of his trial counsel's representation. Applying the

test articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), the petitioner asserts that his counsel's failure, after presenting the defense case, to move for judgment of acquittal pursuant to Maryland Rule 4–324,[5] deprived him of his right to effective assistance of counsel. This is so, he submits, because although, as he has demonstrated, the evidence presented by the State was insufficient to sustain his conviction under § 10–606(a)(3), his counsel, by failing to renew the motion for judgment of acquittal made at the conclusion of the State's case, but withdrawn when he presented his case, waived the issue of legal insufficiency on appeal. He thus urges us to hold that he was prejudiced by this ineffective representation, and, therefore, to reverse his conviction.

## B.

The State argues, as a threshold matter, that this Court should decline to address the petitioner's sufficiency of the

---

5. Maryland Rule 4–324 provides:

 "(a) Generally. A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

 "(b) Action by the Court. If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.

 "(c) Effect of Denial. A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion."

evidence challenge. It explains that the claim, as the petitioner concedes, was not preserved for review, because of defense counsel's failure to renew her motion for judgment of acquittal. Unlike the petitioner, however, the State urges this Court to decline to hold that a failure to move for judgment of acquittal, even where the evidence is insufficient, necessarily constitutes ineffective assistance of counsel. It relies on Maryland Rule 4–324 and Maryland Code (2001) § 6–104 of the Criminal Procedure Article [6] ("CP") which, it notes, together, preclude review of a sufficiency of the evidence claim where a defendant fails to move for judgment of acquittal at the close of all evidence. *Ennis v. State,* 306 Md. 579, 585, 510 A.2d 573, 576 (1986). To hold as the petitioner urges would, in effect, the State argues, allow the petitioner's sufficiency claim to proceed on appeal, and, thus, would effectively render Rule 4–324 and CP § 6–104 surplusage, since there would be no need for the requirement, articulated in those provisions, that defense counsel move for judgment of acquittal before the trial court.

The State next argues that, even if this Court were to consider the sufficiency claim, it is clear that the evidence was

---

**6.** Maryland Code (2001) § 6–104 of the Criminal Procedure Article ("CP") stated, as it currently does in the same section of that article (2001, 2008 Repl.Vol.): "Motion for judgment of acquittal on ground of insufficient evidence

"(a) Motion after State's evidence.—

"(1) At the close of the evidence for the State, a defendant may move for judgment of acquittal on one or more counts or on one or more degrees of a crime, on the ground that the evidence is insufficient in law to sustain a conviction as to the count or degree. "(2) Subject to paragraph (3) of this subsection, if the court denies the motion for judgment of acquittal, the defendant may offer evidence on the defendant's behalf without having reserved the right to do so.

"(3) If the defendant offers evidence after making a motion for judgment of acquittal, the motion is deemed withdrawn.

"(b) Motion after all evidence.—

"(1) The defendant may move for judgment of acquittal at the close of all the evidence whether or not a motion for judgment of acquittal was made at the close of the evidence for the State. "(2) If the court denies the motion for judgment of acquittal, the defendant may have review of the ruling on appeal.

fully sufficient to sustain the petitioner's conviction under CL § 10–606(a)(3). Like the petitioner, the State also looks to the legislative history of the statute, which it concludes does not support the petitioner's argument that the "bodily harm," contemplated by § 10–606(a)(3), necessarily refers to "serious bodily harm." Indeed, it asserts that the petitioner's argument itself violates the rules of statutory construction; it clearly disregards the plain language of the statute. The State explains that the petitioner's reliance on the Legislature's stated purpose is an improper application of the canons of statutory construction, because that language conflicts with the plain text of the relevant statute.

The State also submits that the petitioner's reliance on the doctrine of *ejusdem generis* is misplaced and misapplied. Noting the perimeters of the rule as enunciated in *In re Wallace W.*, 333 Md. at 190, 634 A.2d at 55–56, to wit:

"The doctrine of ejusdem generis applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires. It is generally held that the rule of ejusdem generis is merely a rule of construction and is only applicable where legislative intent or language expressing that intent is unclear,"

it maintains that CL § 10–606(a)(3) falls short of this standard because "the 'class' at issue—'bodily harm, permanent disability, or death'—is exhausted by the enumeration," and, further, that "there is no 'general inference' supplementing the enumeration." In other words, the doctrine must be applied only to subsection (a)(3), the enumeration in subsection (a)(1) having no role to play in that regard. The State further explains that the statutory language of § 10–606(a)(3) was employed by the Legislature, contrary to the petitioner's assertions, because it enumerates escalating types of physical harm. The inclusion of "bodily harm", without specifying what degree of

harm is required, the State submits, is simply an indication that the Legislature intended to include all types of physical harm inflicted on law enforcement animals, rather than limit the harm to any extent.

The State also disagrees with the petitioner's argument that § 10–606(a)(3) requires proof of a specific intent to inflict bodily harm. The State asserts that, unlike those crimes described by this Court in *Chen*, 370 Md. at 110 n. 5, 803 A.2d at 524 n. 5, § 10–606(a)(3) does not require "some specific mental element or intended purpose above and beyond the mental state required for the mere *actus reus* of the crime itself." It concludes, therefore, that the petitioner's "ultimate goal or motive in attacking the dog is irrelevant," because "the jury could reasonably infer that he intended to do just what he did-inflict bodily harm on [the] police dog . . . to force the dog to release its hold" which, in any event, still violates the statute.

Finally, the State argues that the petitioner's actions do not fall within the "self-defense" exception of § 10–606(a)(3). It submits, "[i]njuring a police dog, which is acting under the command of a police officer in the course of a lawful apprehension and in compliance with proper police dog procedures, cannot be what the General Assembly intended by the statutory exception for a 'case of self defense'." It further reminds this Court that, although the petitioner was given several commands to show his hands in order to avoid being attacked by the dog, he did not do so, and thus provoked the conflict by failing to comply with lawful police directions. The State concludes, on these grounds, that the evidence presented at trial was more than sufficient to sustain the petitioner's conviction, though it reiterates its threshold argument, that this Court should decline to review the sufficiency issue altogether.

## C.

We note, at the outset, that the petitioner properly concedes that his trial counsel's failure to move for judgment of acquittal at the conclusion of all the evidence, and thus, failure to

renew his motion, left unpreserved his evidentiary insufficiency claim. This conclusion is not surprising in light of CP § 6–104 and Rule 4–324, both of which make clear that a motion for judgment of acquittal, made at the close of all the evidence, is a prerequisite to "the defendant . . . hav[ing] review of the ruling on appeal." CP § 6–104(a) provides that where a criminal defendant moves for judgment of acquittal at the close of the State's evidence, the motion is denied, and the defendant proceeds to offer his own evidence, the defendant, in effect, has withdrawn his motion. Rule 4–324(c) is to like effect. This motion has no viability unless it is renewed, if counsel moves, again, for judgment of acquittal after the close of all evidence. CP § 6–104(b)(1); Rule 4–324(a). Counsel for the petitioner moved for judgment at the end of the State's case, but did not move for judgment of acquittal at the end of the entire case. "Together, the statute and the rule have been construed to preclude appellate courts of this state from entertaining a review of the sufficiency of the evidence, in a criminal case tried before a jury, where the defendant failed to move for judgment of acquittal at the close of all the evidence." *Ennis*, 306 Md. at 585, 510 A.2d at 576. *See Tull v. State*, 230 Md. 152, 155, 186 A.2d 205, 207 (1962), *Humphreys v. State*, 227 Md. 115, 123, 175 A.2d 777, 781 (1961).

We are presented with a procedural scenario which is identical to that which we addressed in *Ennis, supra,* where a petitioner who failed to move for judgment of acquittal at the close of all the evidence sought review of the sufficiency of the evidence to support his conviction. 306 Md. at 583, 510 A.2d at 575. There, we stated:

"In the instant case, appellant moved for judgment of acquittal at the close of the State's case. That motion was denied. Following that denial, the appellant put on her case. However, she failed to renew her motion for judgment of acquittal at the close of all the evidence. Her failure to do so effectively precluded the trial court from considering her insufficiency contention. Consequently, there was nothing for the Court of Special Appeals to

consider; similarly, there is nothing for us to consider here."

*Id.,* 306 Md. at 587, 510 A.2d at 577 (citations omitted). We went on to note that

"whether an appellate court of this State can entertain review of evidentiary sufficiency in criminal trials depends on whether certain specific and unambiguous procedural prerequisites have been met. . . . As we have already made clear, failure to renew the requisite motion effectively withdraws our authority to consider an insufficiency contention. Additionally, we recognize that an accused's "right" to invoke appellate review of the sufficiency of the evidence sustaining his criminal conviction is circumscribed by state constitutional, legislative and procedural guidelines.

"In sum, appellant's failure to move for judgment of acquittal at the close of all evidence at trial bars appellate review of her insufficiency contention. Had she properly made such a motion at trial, a question of law would have been raised which this Court and the intermediate appellate court could have considered on direct appeal."

*Id.,* 306 Md. at 589–90, 510 A.2d at 578–79 (citations omitted).

■ Although the petitioner correctly concludes and concedes that his claim regarding evidentiary insufficiency was unpreserved, we will exercise our discretion, under Rule 8–131(a), to interpret CL § 10–606(a)(3), and to make clear its purpose and scope. It is our opinion that, even if the right to appellate review had been properly preserved, the petitioner's claim of evidentiary insufficiency would fail.

■■ In reviewing a question regarding the sufficiency of the evidence presented at trial, the primary question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith,* 374 Md. 527, 533, 823 A.2d 664, 668 (2003). *See Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560, 569 (1979); *White v. State,* 363 Md. 150, 162, 767 A.2d 855, 862 (2001); *Tracy v. State,* 423

Md. 1, 11, 31 A.3d 160, 165–66 (2011). Mindful not to usurp the role of the fact-finder, it is important, in so doing, that "[w]e do not re-weigh the evidence," but, instead, seek to determine "whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Smith*, 374 Md. at 534, 823 A.2d at 668 (quoting *White*, 363 Md. at 162, 767 A.2d at 862).

The petitioner challenges his conviction under CL § 10–606(a)(3), which prohibits the intentional infliction of "bodily harm, permanent disability, or death on an animal owned or used by a law enforcement unit." As we have seen, the petitioner's argument turns, largely, on his assertion that the language of CL § 10–606(a)(3) is sufficiently similar to the language of CL § 3–202(a)(1) [7] for this Court to apply its categorization of the latter, as a specific intent crime, to the former. We reject this argument.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the legislature." *Lockshin v. Semsker*, 412 Md. 257, 274, 987 A.2d 18, 28 (2010) (citing *Board of Education v. Zimmer–Rubert*, 409 Md. 200, 214, 973 A.2d 233, 241 (2009); *In re Najasha B.*, 409 Md. 20, 27, 972 A.2d 845, 849 (2009)). *See State v. Weems*, 429 Md. 329, 337, 55 A.3d 921, 926 (2012); *Stoddard v. State*, 395 Md. 653, 661, 911 A.2d 1245, 1249 (2006); *Moore v. State*, 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005). We begin this inquiry by looking, first, to the plain language of the statute, "on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant." *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002). *See Deville v. State*, 383 Md. 217, 223, 858 A.2d 484, 487 (2004). "If there is no ambiguity in that language, either inherently or by refer-

---

7. CL § 3–202(a)(1) provides that "[a] person may not intentionally cause or attempt to cause serious physical injury to another."

ence to other relevant laws or circumstances, the inquiry as to legislative intent ends," and there is no "need to resort to the various, and sometimes inconsistent, external rules of construction...." *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004). We do not, however, "add or delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute," nor do we "construe a statute with forced or subtle interpretations that limit or extend its application." *Lockshin,* 412 Md. at 275, 987 A.2d at 29 (internal quotation marks omitted) (internal citations omitted). Only where "the words of a statute are ambiguous and subject to more than one reasonable interpretation," or "where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme," must a court "resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.,* 412 Md. at 276, 987 A.2d at 29 (citations omitted); *Chow v. State,* 393 Md. 431, 444, 903 A.2d 388, 395 (2006); *Price v. State,* 378 Md. 378, 387–88, 835 A.2d 1221, 1226 (2003). To be sure, we have found statutes to be ambiguous if they are subject to "two or more reasonable alternative interpretations...." *Price,* 378 Md. at 387, 835 A.2d at 1226. That is not the case with CL § 10–606(a)(3).

█ CL § 10–606(a)(3) is unambiguous. It's plain language provides that "except in the case of self-defense," a person may not "intentionally inflict bodily harm, permanent disability, or death on an animal owned or used by a law enforcement unit." We cannot conceive of two reasonable alternative interpretations of this language. It explicitly prohibits actions resulting in three kinds of harm—bodily harm, permanent disability, death—with specific regard to animals both owned, and used, by law enforcement. It was, therefore, unnecessary and, indeed, impermissible for the petitioner to look beyond the language of this statute for guidance, except as confirma-

tion of the plain language.[8] *See Witte*, 369 Md. at 525, 801 A.2d at 165; *Toler v. MVA*, 373 Md. 214, 220, 817 A.2d 229, 233 (2003); *Pelican v. Provident*, 381 Md. 327, 336, 849 A.2d 475, 480 (2004). Rather than seek confirmation of his interpretation of § 10–606(a)(3) from Subtitle 6, Crimes Relating to Animals, the petitioner asks us to look to case law interpreting a wholly separate statute, with a separate purpose, CL § 3–202(a)(1), for guidance as to the intent the Legislature required for commission of the acts it proscribes. As we have seen, on the basis of our interpretation of that statute, the petitioner asks us to conclude that § 10–606(a)(3) contemplates a specific intent to inflict harm upon a police animal. We decline to do so, and, because its language is so clear and unequivocal, decline to look beyond § 10–606(a)(3) for legislative intent. The petitioner's contention that § 10–606(a)(3) requires some specific intent finds no support in the plain statutory language. Indeed, ordinarily, the meaning of a statute cannot be gleaned, as the petitioner would have us do, from a comparison of it to an entirely distinct statute which prohibits a completely different crime.

 We also reject the petitioner's application of *ejusdem generis* to § 10–606(a)(3) as improper. The Latin phrase literally translates to "of the same kind or class," and is defined as "[a] canon of construction holding that when a

---

8. CL § 10–602 states the General Assembly's intention in enacting Subtitle 6, Crimes Relating to Animals:

"It is the intent of the General Assembly that each animal in the State be protected from intentional cruelty, including animals that are:
 "(1) privately owned;
 "(2) strays;
 "(3) domesticated;
 "(4) feral;
 "(5) farm animals;
 "(6) corporately or institutionally owned; or
 "(7) used in privately, locally, State, or federally funded scientific or medical activities."

The General Assembly defined cruelty, as used in the above provision, in CL § 10–601(c)(1), as "the unnecessary or unjustifiable physical pain or suffering caused or allowed by an act, omission, or neglect," including "torture and torment."

general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." BLACK'S LAW DICTIONARY 594 (9th ed.2009). This Court has applied the doctrine of *ejusdem generis* upon the existence of the following conditions:

"(1) the statute contains an enumeration of specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires."

*Boyle v. Maryland–National Capital Park & Planning Commission*, 385 Md. 142, 156, 867 A.2d 1050, 1059 (2005) (quoting *In re Wallace W.*, 333 Md. at 190, 634 A.2d at 55–56). We have also explained that "the doctrine, being only a rule of construction, should not be invoked 'to restrict the meaning of words within narrower limits than the statute intends, so as to subvert its obvious purpose'" *Id.* (quoting *Blake v. State*, 210 Md. 459, 462, 124 A.2d 273, 274 (1956), *State Dep't of Assess. & Taxation v. Belcher*, 315 Md. 111, 121, 553 A.2d 691, 696 (1989)).

As a rule of construction, *ejusdem generis* serves as an alternative mechanism through which the court may ascertain the intent of the Legislature. Like the unrelated case law relied upon by the petitioner, however, "it is generally held that the rule of ejusdem generis is merely a rule of construction and is only applicable where legislative intent or language expressing that intent is unclear." 2A Sutherland Stat. Const. § 47.18, at 200 (7th ed.2012). As such, the petitioner's reliance on this doctrine, too, is premature, and misplaced. As we have already indicated, the intent of the Legislature in enacting § 10–606(a)(3) is readily apparent in the plain language of the statute, and through its own explicitly stated intention to prohibit the infliction of non-accidental harm to animals, including those used by law enforcement. Indeed, the petitioner can point to no clearly manifested intent, by the

Legislature, to the contrary, that the wording, "bodily harm" in actuality means *"serious* bodily harm."

Finally, we do not believe that § 10–606(a)(3) prohibits the infliction of only "serious" bodily harm. Narrowing the meaning of "bodily harm," as the petitioner would have us do, to mean only serious bodily harm, would subvert the statute's purpose. A longstanding principle of statutory construction provides that "our interpretation of [a] statute and the legislature's intent must be examined by looking to the statutory scheme in its entirety rather than segmenting the statute and analyzing only its individual parts." *Marsheck v. Board of Trustees of Fire & Police Employees' Retirement System of City of Baltimore*, 358 Md. 393, 403, 749 A.2d 774, 779 (2000); *Lockshin*, 412 Md. at 275, 987 A.2d at 29; *Anderson v. Council of Unit Owners of Gables on Tuckerman Condominium*, 404 Md. 560, 572, 948 A.2d 11, 19 (2008). Indeed, even "the meaning of the plainest language is controlled by the context in which it appears." *Stoddard*, 395 Md. at 663, 911 A.2d at 1250 (quoting *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996) (internal quotation marks omitted)). Accordingly, instead of "confin[ing] strictly our interpretation of [the] statute's plain language to the isolated section alone," we look, as we must, to the statutory scheme as a whole, in our effort to discern legislative intent from it's language. *Lockshin*, 412 Md. at 265, 987 A.2d at 29; *Johnson v. State*, 360 Md. 250, 264, 757 A.2d 796, 804 (2000) ("To prevent illogical or nonsensical interpretations of a [statute], we analyze the [statute] in its entirety, rather than independently construing its subparts.").

CL § 10–606 provides:

"(a) Prohibited.—A person may not:

"(1) intentionally mutilate, torture, cruelly beat, or cruelly kill an animal;

"(2) cause, procure, or authorize an act prohibited under item (1) of this subsection; or

"(3) except in the case of self-defense, intentionally inflict bodily harm, permanent disability, or death on an animal owned or used by a law enforcement unit."

Viewing the above language in its entirety, it becomes clear that the Legislature, by distinguishing, in (a)(3), "animal[s] owned or used by a law enforcement unit" from the general category of "animals" in (a)(1), sought to place a special emphasis on that category. It is also clear, upon analyzing the language of the subsection as a whole, that the Legislature did so, because it intended to create a lower threshold for violation with regard to this category. This becomes evident upon comparing the kind of harm prohibited under (a)(1)— "intentional[ ] mutilat[ion], torture, cruel[ ] beat[ing], or cruel[ ] kill[ing]"—to the lowest degree of harm prohibited by (a)(3), namely, "bodily harm." [9] Holding, as the petitioner would have us do, that subsection (a)(3), also, is limited to harm of equal degree as that articulated in (a)(1), would render the specificity of (a)(3) mere surplusage and, thus, unnecessary. This runs afoul of the well-settled and oft-enunciated proposition, that, in conducting statutory interpretation, "whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 181, 776 A.2d 645, 654–55 (2001); *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302, 783 A.2d 667, 671 (2001); *Liverpool v. Baltimore Diamond Exchange, Inc.*, 369 Md. 304, 317, 799 A.2d 1264, 1271 (2002).

 We are, likewise, unpersuaded by the petitioner's contention that he acted in self-defense when he hit and injured Bennie. The elements of self-defense in Maryland are well-established: [10]

---

9. Because there is no attempt to parse or further define "bodily harm," we must assume that the General Assembly intended that phrase to cover the universe.

10. Maryland recognizes both perfect and imperfect self-defense. *State v. Smullen*, 380 Md. 233, 251, 844 A.2d 429, 439 (2004). Perfect self-defense occurs when the belief of danger is subjectively held by the

"(1) The accused must have had reasonable grounds to believe himself . . . in apparent imminent or immediate danger of death or serious bodily harm from his . . . assailant or potential assailant;

"(2) The accused must have in fact believed himself . . . in this danger;

"(3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and

"(4) The force used must have not been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded."

*Roach v. State*, 358 Md. 418, 429–30, 749 A.2d 787, 793 (2000) (citations omitted).

Applying the above standard to the case *sub judice*, it is readily apparent that the petitioner's assertion of self-defense cannot succeed because he invited ("provoked") the conflict, thus failing to meet the third required element. The facts are unambiguous. The stabbing victim named and identified the petitioner as his assailant. Upon being found, the petitioner was ordered by law enforcement to stop. Disregarding this order, he fled from police. Officer Davies and Bennie, his canine, who joined the search efforts as back-ups, discovered the petitioner and ordered him to surrender and to keep his hands in unobscured view. He ignored those orders and refused to submit to arrest, even when repeatedly and explicitly warned that non-compliance would result in Bennie being released. It was only after this series of events, constituting consistent disregard for the law by the petitioner, that the canine was released.

---

accused and is objectively reasonable, while imperfect self-defense occurs when the actual subjective belief on the part of the accused is not objectively reasonable. *Id.*, 380 Md. at 251–52, 844 A.2d at 439–440 (citing *State v. Faulkner*, 301 Md. 482, 500, 483 A.2d 759, 768–69 (1984) and *Dykes v. State*, 319 Md. 206, 211, 571 A.2d 1251, 1254 (1990)) (citations omitted). A common element of both forms of self-defense is that the accused must not have been the aggressor or provoked the conflict. *Id.*, 380 Md. at 252–53, 844 A.2d at 440. Here, we are concerned only with perfect self-defense.

The petitioner's self-defense argument also fails because he used excessive force in his interaction with the canine. In response to its trained attempts to restrain him, the petitioner struck the canine several times, inflicting a half-inch wide cut above its right eye. Contrary to the petitioner's assertions, such an injury is hardly "insignificant." Regardless of degree, however, the petitioner, as we have seen, violated the statute by intentionally inflicting *any* bodily harm on the police canine.

In sum, we reject the petitioner's contention that his conviction should be reversed due to the insufficiency of the evidence presented at trial. The undisputed facts show that the petitioner intentionally and repeatedly struck Bennie, who was performing its duty in accordance with police procedure, on its head, causing it bodily harm. There is absolutely no contention that Bennie, or its owner, for that matter, was acting illegally. As such, a rational jury could have found and, indeed, did find beyond a reasonable doubt, that the petitioner's conduct satisfied the elements of aggravated cruelty to animals, thus violating § 10–606(a)(3). In light of the facts, we also reject the petitioner's contention that he acted in self-defense, and, therefore, was relieved of the consequences of his § 10–606(a)(3) violation.

Like the Court of Special Appeals, we believe that it is unnecessary to address the petitioner's claim of ineffective assistance, since it rests, solely, on his assertion that the evidence presented against him was insufficient to sustain his § 10–606(a)(3) conviction. We do, however, note that a failure to renew a motion for judgment of acquittal, in our opinion, does not automatically render assistance ineffective. That would be the effect were we to hold as the petitioner would have us do. The basis of the petitioner's insufficient evidence claim, which is essential to his ineffective assistance claim, is a statutory construction and factual argument, unresolved when presented. There simply is no objective, uncontroverted or conceded error. Under such circumstances, we agree with the State; the issue of the effectiveness of counsel must await subsequent post-conviction review.

**474**

We affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.**

RAKER, J. joins in judgment only.