*Michael Vanison v. State of Maryland*, No. 296, Sept. Term 2021.  Opinion by Zic, J.

**CRIMINAL LAW § 9-414(a)(4) – POSSESSION OF WEAPON – PLACE OF CONFINEMENT – BURDEN OF PRODUCTION**

Section 9-410(h) of the Criminal Law Article defines weapon as "a gun, knife, explosive, or other article that can be used to kill or inflict bodily injury."  A makeshift knife that is described as "part of a fingernail clipper that was taken apart, sharpened and then added to a plastic handle" meets the definition of "weapon" under Crim. Law 9-410(h).  That description also satisfies the State's burden of production because it is objectively sufficient for factfinding to take place.

**CRIMINAL LAW § 9-412(a)(3) – DEFINITION OF CONTRABAND – PLACE OF CONFINEMENT**

Section 9-410(c) of the Criminal Law Article defines "contraband" as "any item, material or substance, or other thing that:  . . .  (1) is not authorized for inmate possession by the managing official; or (2) is brought into the correctional facility in a manner prohibited by the managing official."  The ordinary understanding of "contraband" would include a makeshift knife concealed in an inmate's anus and discovered during a routine strip search at intake.  The Code of Maryland Regulations and the Inmate Disciplinary Process, included in the regulations for the Department of Public Safety and Correctional Services, supports this conclusion.

**CRIMINAL LAW § 4-101(c)(1) – DANGEROUS WEAPON – CONCEALED WEAPON**

"Dangerous weapon concealed on or about the person" is not limited to the enumerated items under § 4-101(a)(5)(i).  Whether an item is a "dangerous weapon" is decided by the trier of fact based upon the circumstances in a particular case.  Factors to be considered are:  (1) the nature of the instrument, *i.e.*, its size, shape, condition, and possible alteration; (2) the circumstance under which it is carried, *i.e.*, the time, place and situation in which the defendant is found with it; (3) defendant's actions *vis-à-vis* the item; and (4) the place of confinement.  A "portion of a fingernail clipper that was attached to a plastic handle" and "sharpened to a point" found during a strip search at a prison where the item had been concealed in the body is legally sufficient to sustain a conviction under Criminal Law § 4-101(c)(1).

Circuit Court for Washington County
Case No.: C-21-CR-20-000509

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 296

September Term, 2021

_____

MICHAEL VANISON

v.

STATE OF MARYLAND

_____

Zic,
Ripken,
Wright, Alexander, Jr.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Zic, J.
_____

Filed: October 31, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant, Michael Vanison, was charged by criminal information in the Circuit Court for Washington County, Maryland, with: (1) knowingly possessing a weapon while confined in a place of confinement, in violation of § 9-414(a)(4) of the Criminal Law Article; (2) knowingly possessing contraband in a place of confinement, in violation of § 9-412(a)(3) of the Criminal Law Article; and (3) wearing or carrying a dangerous and deadly weapon, in violation of § 4-101(c)(1) of the Criminal Law Article. Mr. Vanison entered a not guilty plea on an agreed statement of facts and was found guilty on all three counts. Mr. Vanison was sentenced to one year and one day for knowingly possessing a weapon while confined in a place of confinement, to be served consecutive to any other sentences he was serving. The remaining counts were merged into the first. Mr. Vanison timely appealed and asks us to address the following question:

> Was the evidence set out in the agreed statement of facts sufficient to support [a]ppellant's convictions beyond a reasonable doubt for violating [§ 4-101, § 9-412 and/or § 9-414 of the Criminal Law Article]?

For the following reasons, we shall affirm.

## BACKGROUND

Mr. Vanison was charged with knowingly possessing "a portion of a fingernail clipper, sharpened to a point, and attached to a plastic handle." Count 1 charged Mr. Vanison with knowingly possessing a weapon while confined in a place of confinement. Section 9-414(a)(4) of the Criminal Law Article provides that "[a] person detained or confined in a place of confinement may not knowingly possess or receive a weapon." Count 2 charged Mr. Vanison with knowingly possessing contraband while confined in a place of confinement. Section 9-412(a)(3) of the Criminal Law Article provides that "[a]

person may not: . . . (3) knowingly possess contraband in a place of confinement."

Count 3 charged Mr. Vanison with wearing or carrying a dangerous weapon of any kind

concealed on or about the person. Section 4-101(c)(1) of the Criminal Law Article

provides that "[a] person may not wear or carry a dangerous weapon of any kind

concealed on or about the person." "Weapon" is further defined in this statute.

"'Weapon' includes a dirk knife, bowie knife, switchblade knife, star knife, sandclub,

metal knuckles, razor, and nunchaku." Md. Code Ann., Crim. Law § 4-101(a)(5)(i).

"'Weapon' does not include: 1. a handgun; or 2. a penknife without a switchblade."

Crim. Law § 4-101(a)(5)(ii).

At the not guilty plea hearing, the parties entered into the following agreed

statement of facts:

> [PROSECUTOR]: May it please the Court. Your Honor, if called upon to do so the State [would produce witnesses] who would testify to the following. On January 31, 2020, at approximately 1:50 p.m., the Defendant, Mr. Michael Vanison, Jr., was being brought from the Maryland Correctional Training Center ["MCTC"] to [] the Roxbury Correctional Institution ["Roxbury"], which is located on Roxbury Road, in Hagerstown, Washington County, Maryland.
>
> As is the process for any new arrival inmates, Officer Mark Patey and Lieutenant Jeffrey Sigler conducted a strip search of Mr. Vanison. At that time, he was, he was stripped, he was instructed to bend and spread his buttocks. During this time Officer Patey observed an object protruding from Mr. Vanison's anus. Officer Patey instructed Mr. Vanison to remove the object and drop the item to the floor. Inmate Vanison did comply and he removed a portion of a fingernail clipper that was attached to a plastic handle. A portion of the nail clipper was sharpened to a point. Officer Patey then took possession and maintained custody of the item and

subsequently placed it into the Roxbury Correctional Institute Evidence locker. It was subsequently removed by Detective Sergeant Toston and placed securely. Detective Sergeant Toston did bring the weapon today and the State wishes to approach to and moves to admit State's Exhibit Number 1.

[DEFENSE COUNSEL]: I've seen it, Your Honor.

[THE COURT]: Very well. Any objection to the admission?

[DEFENSE COUNSEL]: No, sir.

[THE COURT]: Thank you. Number 1 will be admitted.

(State's exhibit 1 was marked and admitted into evidence.)

[PROSECUTOR]: Thank you, Your Honor. These events occurred in Washington County, Maryland and that is the State's Statement of Facts.

[DEFENSE COUNSEL]: I don't have any additions or corrections to that, Your Honor.

Following this, defense counsel argued that State's Exhibit 1 was not included in the list of weapons enumerated in § 4-101 of the Criminal Law Article. Because it was not listed, counsel continued that Mr. Vanison could not be convicted on Count 3 for wearing and carrying a dangerous and deadly weapon. Defense counsel continued that the item also could not be considered "contraband" under Criminal Law § 9-412(a)(3) because neither the statute nor the provision of the Code of Maryland Regulations defining "contraband" listed or otherwise included "weapons" in the definition.

The State responded that, although the policies at Roxbury might permit a nail clipper, the item in question, State's Exhibit 1, had been altered and "cannot be used as a nail clipper. In fact, it's got a handle on it, it's sharpened on it and we maintain that it's to be used as a weapon." And, the item was contraband and a weapon considering that it

3

could be "used to kill or inflict bodily injury." The State continued that the items listed in the dangerous weapon statute did not constitute an "exhaust[ive] list" and that "[i]n our case, there's only one purpose to be carrying a shank and that is for the purpose of inflicting bodily harm . . . ."

After hearing further argument from the parties, the court found Mr. Vanison guilty on all counts. The court found as follows:

> [THE COURT]: On or about January 31, 2020, Mr. Vanison was being transferred from MCTC to Roxbury upon arrival at Roxbury he went through standard search which included strip search. Object was found in his anus and that appeared to be part of a fingernail clipper that was taken apart, sharpened and then added to a plastic handle. I did view the item and let it, it looks like to me is a makeshift knife. It is a knife. Question then from the Defense is does it meet the definitions as would be required under a particular charges. Charge 1, Possession of a Weapon while Confined under 9-414(a)(4) of the Criminal Law Article. Count 2, Possession of Contraband under Section 9-412(a)(3). And then Count 3, Possession of a Dangerous Weapon, Dangerous and Deadly Weapon under Section 4-101(c)(1). And the argument made to me today has some constitutional components to it. Has some notice components to it. Has components to it as to whether the legislature has properly defined what a knife is or what a weapon is or what contraband is or what a dangerous weapon is in the various sections of the Code.

> As to Count 1 then, Possession of a Weapon, for the section the weapon is defined as, I did hear, earlier 9-410(h), weapon means a gun, knife, club, explosive or other article that can be used to kill or inflict bodily injury. I believe that the knife that I looked at which is Exhibit 1 is a knife or it is another article that could be used to kill or inflict bodily injury and therefore I believe it meets the definition of a weapon for that section.

> As to contraband, contraband is defined in 9-410, contraband is any item, material, substance or other thing that

4

is not authorized for the inmate to possess or is brought into the correctional facility in a manner prohibited by the managing official. What I've not heard today is that there's any lack of a policy as to what can the manner in which something is brought into the facility and I haven't heard that you're arguing against that at all. And so, I believe that this knife is contraband under 9-410.

I guess the big question is whether it is a dangerous weapon under 4-101. I asked the merger question because really I'm sitting here wondering does it really matter if he is found guilty under 4-101 because if they all merge then I'm going to issue one sentence anyways. My reading of 4-101 is not as limited as [Defense Counsel] asks me to make it. I don't know that the definition from 9-410 goes over to 4-101. In fact, I think that would be terrible for the Defendant because then I would have that 9-410 definition, which I think would result in a conviction. I'm willing to look at the 4-101 definition independently but I don't read it to say that a weapon is and can only be nunchucks, pepper mace, star knife, the nine weapon list. I don't believe it's limited to those nine weapons. And I don't believe that there's a constitutional problem of due process or notice to an inmate as to what a weapon is under that definition in 4-101.

And so based on the agreed statement of facts, based upon my legal conclusions concerning these definitions I believe that the Defendant is guilty of Count 1, Count 2, and Count 3, beyond a reasonable doubt. And that is the judgment of the Court. Are we ready for sentencing?

## DISCUSSION

Mr. Vanison argues the evidence was insufficient to sustain his convictions on all three counts. Maryland Rule 8-131(c) provides the standard for appellate review:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The Court of Appeals has explained this standard:

> This Court has consistently recognized and applied this rule when reviewing the sufficiency of evidence. *Credible Behavioral Health, Inc., v. Johnson*, 466 Md. 380, 388 (2019); *see also* [*State v. Manion*, 442 Md. 419, 431 (2015)] ("It is simply not the province of the appellate court to determine whether . . . [it] could have drawn other inferences from the evidence[.]").

> Maryland appellate courts accordingly adopt a deferential standard when reviewing sufficiency of evidence that asks whether "*any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

*State v. McGagh*, 472 Md. 168, 193 (2021).

This case not only concerns factual issues about the nature of the item found during the strip search, but also issues of statutory interpretation. As for the statutory interpretation part of our analysis, we apply a de novo standard of review. *Harrison-Solomon v. State*, 216 Md. App. 138, 146 (2014), *aff'd*, 442 Md. 254 (2015); *see also Moore v. State*, 388 Md. 446, 452 (2005) ("Interpretation of a statute is a question of law, and, therefore, we review de novo the decision of the Circuit Court.").

"The statutory construction analysis commences with the plain language of the statute." *Johnson v. State*, 467 Md. 362, 372 (2020) (internal citations and quotations omitted); *see also Blackstone v. Sharma*, 461 Md. 87, 113 (2018) ("[W]e begin 'with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.'") (citation omitted). "If the language is clear and unambiguous, we ordinarily 'need not look beyond the statute's provisions

6

and our analysis ends.'" *Opert v. Crim. Injs.*, 403 Md. 587, 593 (2008) (internal citations and quotations omitted). We may also consider prior case law in construing the statute in question. *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 170 (2021). Further, "it is important to consider the consequences of alternative interpretations of the statute, in order to avoid constructions that are 'illogical or nonsensical, or that render a statute meaningless.'" *Id.* (quoting *Couret-Rios v. Fire & Police Emps.' Ret. Sys.*, 468 Md. 508, 528 (2020)).

## I. THE MAKESHIFT KNIFE WAS A "WEAPON" FOR PURPOSES OF CRIMINAL LAW § 9-414(A)(4).

Count 1 charged Mr. Vanison under Criminal Law § 9-414(a)(4). That section provides that "[a] person detained or confined in a place of confinement may not knowingly possess or receive a weapon." Crim. Law § 9-414(a)(4). "Weapon" is further defined by the same subtitle as "a gun, knife, club, explosive, or other article that can be used to kill or inflict bodily injury." Crim. Law § 9-410(h). State's Exhibit 1 is not included with the record on appeal, and there is no photograph in the record. However, the trial court described the item as follows:

> Object was found in his anus and that appeared to be part of a
> fingernail clipper that was taken apart, sharpened and then
> added to a plastic handle. I did view the item and let it, it
> looks like to me is a makeshift knife. It is a knife.

In addition, the court found that "I believe that the knife that I looked at which is Exhibit 1 is a knife or it is another article that could be used to kill or inflict bodily injury and therefore I believe it meets the definition of a weapon for that section."

7

A "knife" is one of the items enumerated in Criminal Law § 9-410(h).  Further, a "weapon" includes items "that can be used to kill or inflict bodily injury."  *Id*.  This satisfies the plain language requirement of statutory interpretation.  We also conclude it met the State's burden of production.  As this Court has explained:

> In the most basic of terms, the critical issue, regardless of the trial modality, is whether the State has satisfied its burden of production.  The issue of legal sufficiency of the evidence is not concerned with the findings of fact based on the evidence or the adequacy of the factfindings to support a verdict.  It is concerned only, at an earlier pre-deliberative stage, with the objective sufficiency of the evidence itself to permit the factfinding even to take place.  The burden of production is not concerned with what a factfinder, judge or jury, does with the evidence.  It is concerned, in the abstract, with what any judge, or any jury, anywhere, could have done with the evidence.  It is an objective measurement, quantitatively and qualitatively, of the evidence itself.  It is a question of supply and not of execution.

*Chisum v. State*, 227 Md. App. 118, 129-30 (2016) (footnote omitted).

As the circuit court's findings were not clearly erroneous, we are persuaded, under a plain reading of the statute, that the item was a "weapon" and that the evidence was sufficient to sustain Mr. Vanison's conviction under Criminal Law § 9-414(a)(4).

**II.     THE MAKESHIFT KNIFE WAS "CONTRABAND" FOR PURPOSES OF CRIMINAL LAW § 9-412(A)(3).**

Count 2 charged Mr. Vanison under Criminal Law § 9-412(a)(3).  That section provides that "[a] person may not:  . . . (3) knowingly possess contraband in a place of confinement."  *Id*.  "Contraband" is further defined by § 9-410 as "any item, material, substance, or other thing that:  . . . (1) is not authorized for inmate possession by the

8

managing official; or (2) is brought into the correctional facility in a manner prohibited by the managing official."  Crim. Law § 9-410(c).

There is no indication in this plain wording that a "knife" qualifies as "contraband."  In interpreting the statute, we may consult the dictionary.  *See Montgomery Cnty. v. Deibler*, 423 Md. 54, 67 (2011) (observing that, although they are not dispositive, dictionary definitions "provide[] a useful starting point" for statutory interpretation) (quotation omitted).  Merriam-Webster defines "contraband" as follows:

> 1. : illegal or prohibited traffic in goods : SMUGGLING
>
> // . . . persons the most bound in duty to prevent *contraband* . . .
>
> -- Edmund Burke
>
> 2: goods or merchandise whose importation, exportation, or possession is forbidden
>
> // Border police searched the car for drugs and other *contraband*.
>
> *also* : smuggled goods . . .

MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/contraband (last visited Sept. 21, 2022) (emphasis in original).

 Considering this definition, along with the provisions of § 9-412 and § 9-414, we conclude that the ordinary understanding of "contraband" would include a makeshift knife concealed in an inmate's anus and discovered during a routine strip search at intake.  As the State points out in its appellate brief, § 9-414 prohibits possession of a knife; and contraband, under § 9-412, includes items that are unauthorized for possession in a correctional institution.  These statutes are part of the same statutory scheme and are

construed accordingly.  *See Murphy v. State*, 100 Md. App. 131, 135 (1994) (statutes *in pari materia* must be construed harmoniously).

Our conclusion is also supported by provisions of the Code of Maryland Regulations ("COMAR"), especially by the pertinent regulations governing inmate discipline.  *See* Md. Code Ann., Corr. Servs. § 3-205 (authorizing the Department of Public Safety and Correctional Services to adopt regulations and "provide for: (1) the discipline and conduct of inmates").  *See generally, United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 84 (1932) (acknowledging "the practical and long-continued construction of the executive departments charged with the administration of the act and with the duty of making the rules and regulations therein" in matters of statutory interpretation); Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 31:6 (7th ed. 2010) ("Administrative regulations have been frequently used as guides to determine the meaning of statutory provisions.").

Mr. Vanison directs our attention to COMAR 12.02.17.01, which provides that "contraband" means:

> (a) An item, material, substance, or other thing that is not authorized by a warden or facility administrator of the facility; [or]
>
> (b) An item, material, substance, or other thing which is brought into the facility in a manner not sanctioned by Division or institutional policy or procedure . . . .

COMAR 12.02.17.01(B)(2).

We are not persuaded that this definition is substantially different from the ones already discussed.  Moreover, there are other regulations that support the State's position.

10

Inmates are required to comply with certain rules, including, but not limited to, restrictions against possessing contraband, and contraband may include "a weapon." *See* COMAR 12.03.01.03(D)(1) ("D. Contraband may be charged as a single inmate rule violation or in conjunction with other inmate rule violations that may include, but are not limited to:  (1) A weapon . . . ."). In addition, possession of a weapon is considered a major violation of disciplinary rules. *See* COMAR 12.12.09.03(D)(7).  And, both possession of a "weapon" and "contraband" are considered inmate violations. *See* COMAR 12.03.01.04(C)(6) ("C. Category IA Inmate Rule Violations.  An inmate may not:  . . . (6) 105 -- Possess, use, or manufacture a weapon . . . ."); COMAR 12.03.01.04(F)(16) ("F. Category III Inmate Rule Violations.  An inmate may not:  . . . (16) 315 -- Possess or pass contraband . . . .").

Additionally, the chapter on the Inmate Disciplinary Process, included in the regulations for the Department of Public Safety and Correctional Services, defines "weapon" as follows:

> (a) "Weapon" means an instrument, item, article, substance, liquid, tool, or material that:
>
>> (i) May be used for offensive or defensive combat;
>>
>> (ii) May be used to threaten, harm, or injure an individual; or
>
> (iii) May be used for a purpose or reason other than as a weapon, but that could be used as a weapon regardless of whether or not the original character of the instrument, item, article, substance, liquid, tool, or material was altered.
>
> (b) "Weapon" includes an instrument, item, article, substance, liquid, tool, or material that otherwise meets the definition of

11

> weapon that an inmate is permitted to possess in an explicitly
> designated area, but is possessed in an area other than where
> the instrument, item, article, substance, liquid, tool, or
> material is not explicitly authorized by staff.

COMAR 12.03.01.02(B)(45).

We conclude that the item the trial court described as a "makeshift knife" and a "knife" met the statutory definition of "contraband." Further, we conclude the evidence was sufficient to sustain Mr. Vanison's conviction under Criminal Law § 9-412(a)(3).

### III. THE MAKESHIFT KNIFE WAS A DANGEROUS WEAPON UNDER CRIMINAL LAW § 4-101(C)(1).

Count 3 charged Mr. Vanison with wearing or carrying a dangerous weapon concealed on or about the person in violation of Criminal Law § 4-101(c)(1). That section provides that "[a] person may not wear or carry a dangerous weapon of any kind concealed on or about the person." Crim. Law § 4-101(c)(1). The statute further defines "weapon" in subsection (i) to include "a dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, and nunchaku." Crim. Law § 4-101(a)(5)(i). And, subsection (ii) provides that "weapon" does not include "1. a handgun; or 2. a penknife without a switchblade." Crim. Law § 4-101(a)(5)(ii).

There is no ambiguity in these statutes. The State argues the item was a "knife" and is of the type of weapons enumerated in Criminal Law § 4-101(a)(5)(i). Contrary to this suggestion, the makeshift knife, made out of "a fingernail clipper that was taken apart, sharpened and then added to a plastic handle" does not fit the definition of any of the specific items enumerated in subsection (i). In addition, no one claims that the item is a handgun or a "penknife without a switchblade." *See* Crim. Law § 4-101(a)(5)(ii); *see*

12

*also Thornton v. State*, 162 Md. App. 719, 736 (2005) ("Penknives today are commonly considered to encompass any knife with the blade folding into the handle, some very large."), *rev'd on other grounds*, 397 Md. 704 (2007). As it is not among the enumerated items in subsection (i), we must then decide if the makeshift knife is a "dangerous weapon concealed on or about the person." Crim. Law § 4-101(c)(1).

Initially, we do not have any difficulty concluding, nor does Mr. Vanison claim otherwise, that the item was "concealed" as it was found during a strip search protruding from Mr. Vanison's anus at prisoner intake. *See Shipley v. State*, 243 Md. 262, 269 (1966) ("[A] weapon is concealed if it is so situated as not to be discernible by ordinary observation . . . ."). Notably, this concealment is also evidence of consciousness of guilt. *See Wagner v. State*, 213 Md. App. 419, 465 (2013) (recognizing that concealment of evidence may be evidence of consciousness of guilt).

Next, as a manner of statutory construction, Mr. Vanison argues that although § 4-101(a)(5)(i) is "not exclusive[,] it does suggest a class of objects" under the principle of *ejusdem generis*. That doctrine has been explained as follows: "[W]hen general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned." *Haile v. State*, 431 Md. 448, 458 (2013) (quoting *In re Wallace W.*, 333 Md. 186, 190 (1993)). As the Court of Appeals explained:

> The doctrine of *ejusdem generis* applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a

13

class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

*Tribbitt v. State*, 403 Md. 638, 657 (2008) (quoting *In re Wallace W.*, 333 Md. at 190).

Furthermore, *ejusdem generis* "is merely a rule of construction, and cannot be invoked to restrict the meaning of words within narrower limits than the statute intends, so as to subvert its obvious purpose." *Tribbit*, 403 Md. at 657 (quoting *Blake v. State*, 210 Md. 459, 462 (1956)).

Mr. Vanison contends that the term "weapon" should be construed to exclude objects of a class "akin to those normally carried in the ordinary course of business including a pen knife, a utility knife and a carpet knife." Mr. Vanison avers that the item was "a portion of a nail clipper" and "is not a knife but a file." This characterization, however, contrasts with the circuit court's express finding that the item was "a fingernail clipper that was taken apart, sharpened and then added to a plastic handle" and was a "makeshift knife. It is a knife."

Moreover, although § 4-101(a)(5)(i) does contain an enumeration of specific words, the suggested class is not limited to knives – the class includes weapons of various types, including clubs, metal knuckles and nunchaku. We also note that there is no general reference supplementing the enumeration in the subsection, other than the indication that the sample list does not include handguns and penknives in subsection (ii). Thus, we are not persuaded that *ejusdem generis* applies in this instance, at least not in the manner Mr. Vanison contends.

14

Turning to caselaw and whether the item was a "dangerous weapon," the determination of whether the item is a dangerous weapon falls to the trier of fact to decide based upon the circumstances in a particular case. *McCracken v. State*, 150 Md. App. 330, 367 (2003) (interpreting former Article 27 § 36, and citing *Anderson v. State*, 328 Md. 426, 438 (1992)). "[S]uch a determination requires a finding, based on all of the circumstances, that the person had 'at least the general intent to carry the instrument for its use as a weapon, either of offense or defense.'" *Id.*

In *Anderson v. State*, the Court considered the predecessor to Criminal Law § 4-101, former Art. 27 § 36, which made criminal, among other things, the carrying of certain specified weapons and "any other dangerous or deadly weapon of any kind" upon or about one's person. 328 Md. at 434. In that case, Anderson was observed by police talking to the occupants of a car in an area known to be an open-air drug market. *Id.* at 428-29. As Anderson was walking away from the car, a police officer stopped him and asked for identification, which Anderson provided. *Id.* at 429. Anderson also consented to a search of his person. *Id.* The officer asked Anderson if he possessed "any type of weapon or a knife or anything," and Anderson took a utility knife from his back pants pocket and handed it to the officer. *Id.* at 429-30. A piece of soap and three small glassine baggies were recovered from Anderson's front pocket. *Id.* at 430. Anderson told the officer he used the utility knife on his job, but he never stated the type of job he had. *Id.*

Anderson was charged with, *inter alia*, the unlawful wearing and carrying of a "razor knife, a dangerous or deadly weapon, concealed upon and about [his] person,"

15

contrary to Art. 27 § 36. *Id.* After a bench trial, he was found guilty. *Id.* at 431. In an

unreported opinion, we affirmed, reasoning that the General Assembly had imposed "a

special mens rea on the open carrying of weapons but deliberately did not impose such a

special mens rea on the act of carrying concealed dangerous and deadly weapons." *Id.*

The Court of Appeals disagreed and held that the trial court improperly convicted

Anderson on a determination that the utility knife he was carrying was a dangerous and

deadly weapon *per se*, without considering Anderson's intent in fact. *Id*. at 444. The

Court explained:

> The character of a weapon as a deadly or dangerous weapon
> is not necessarily determined by its design, construction, or
> purpose. A weapon may be deadly or dangerous although not
> especially designed or constructed for offensive or defensive
> purposes or for the destruction of life or the infliction of
> bodily injury. Accordingly, when a weapon is in fact used in
> such a way as is likely to produce death or grievous bodily
> harm it may be properly regarded as a dangerous or deadly
> weapon.

*Anderson*, 328 Md. at 435 (quoting *Bennett & Flynn v. State*, 237 Md. 212, 215 (1964),

in turn quoting 3 *Wharton's Criminal Law & Procedure* § 961, at 113 (Anderson's ed.

1957)). And, to be characterized as dangerous, a weapon must be:

> (1) designed as '[]anything used or designed to be used in
> destroying, defeating, or injuring an enemy, or as an
> instrument of offensive or defensive combat[;]' (2) under the
> circumstances of the case, immediately useable to inflict
> serious or deadly harm (e.g., unloaded gun or starter's pistol
> useable as a bludgeon); or (3) actually used in a way likely to
> inflict that sort of harm (e.g., microphone cord used as a
> garrote).

*Anderson*, 328 Md. at 436 (quoting *Brooks v. State*, 314 Md. 585, 600 (1989)). *Cf. In re*

16

*Melanie H.*, 120 Md. App. 158, 169-70 (1998) (holding that, under former Article 27 § 36A – carrying or possessing deadly weapon upon school property, the State must show that the item, can "under the circumstances of the case, reasonably be considered a deadly weapon" and that a butter knife found inside the juvenile's backpack in her locked school locker did not qualify, considering there was evidence the knife was used as a lever, not a weapon).

The Court in *Anderson* adopted a four-factor analysis to be considered when addressing whether a defendant's intent transformed a concealed instrument into a concealed dangerous or deadly weapon. *Anderson*, 328 Md. at 442-44. Those four factors are: "(1) the nature of the instrument, *i.e.*, its size, shape, condition and possible alteration; (2) the circumstances under which it is carried, *i.e.*, the time, place and situation in which the defendant is found with it; (3) defendant's actions *vis-[à]-vis* the item; and (4) the place of concealment." *Id*. at 443 (quoting *State v. Blea*, 668 P.2d 1114, 115-16 (N.M. Ct. App. 1983)).

Applying these factors here: (1) the item was a "portion of a fingernail clipper that was attached to a plastic handle," and "sharpened to a point;" (2) it was found during a strip search as Mr. Vanison entered the Roxbury Correctional Institute from the Maryland Correctional Training Center for further incarceration; (3) and (4) the item was concealed in Mr. Vanison's anus and it would be reasonable to infer that the concealment was intentional and with Mr. Vanison's knowledge. We are persuaded that there was legally sufficient evidence that Mr. Vanison carried the concealed knife with the intent to

17

use it as a weapon. *See Anderson,* 328 Md. at 438. The evidence was sufficient to sustain his conviction under Criminal Law § 4-101(c)(1).

**JUDGMENTS OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**